UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| MAS CAPITAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | CASE NO. 3:04-cv-0092-DFH-WGH |
| ) | |
| BIODELIVERY SCIENCES ) | |
| INTERNATIONAL, INC., ) | |
| ) | |
| Defendant. ) | |

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff MAS Capital, Inc. has sued defendant Biodelivery Sciences International, Inc. ("BDSI") for approximately $1,575,000, for services allegedly rendered in connection with BDSI's public offering of stock, which raised $10,500,000. In this bid for a full 15 percent of the proceeds of the stock offering, MAS Capital does not rely on a contract or allege a breach of contract. Instead, MAS Capital asserts that it introduced BDSI to the companies that actually underwrote the stock offering, and it relies on theories of an implied contract, unjust enrichment, constructive contract, quasi-contract, and quantum meruit to recover this 15 percent finder's fee from BDSI. BDSI has filed a counterclaim seeking its attorney fees and costs on the grounds that MAS Capital has pursued a frivolous lawsuit. See Ind. Code § 34-52-1-1.

BDSI has moved for summary judgment on both the complaint and its own counterclaim. BDSI argues that MAS Capital and its principal Aaron Tsai, at the time they sold all stock and stock options they held in BDSI, also relinquished any rights they had to receive "any consideration in any form or nature from BDSI." The release occurred as part of a transaction prompted by NASDAQ inquiries about Tsai's involvement in BDSI and three separate Securities and Exchange Commission investigations of Tsai and his companies. As explained below, the court grants summary judgment for BDSI on the claims of MAS Capital but denies summary judgment on the counterclaim.

*Summary Judgment Standard*

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On a motion for summary judgment, the moving party must first come forward and identify those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, which the party believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323. To defeat a summary judgment motion, the non-moving party must present more than mere speculation or conjecture. Where the moving party has met the threshold burden of supporting the motion, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* A mere scintilla of evidence supporting the non-moving party's position is not sufficient. See *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 933 (7th Cir. 1997), citing *Anderson*, 477 U.S. at 252. The issue is whether a reasonable jury might rule in favor of the non-moving party based on the evidence in the record. *Anderson*, 477 U.S. at 252; *Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997). Contract interpretation often presents a question of law for which summary judgments is appropriate. *E.g.*, *National Fire & Casualty Co. v. West*, 107 F.3d 531, 534-35 (7th Cir. 1997) (affirming summary judgment under Indiana contract law); *Tri-Central High School v. Mason*, 783 N.E.2d 341, 344 (Ind. App. 2000).

*Undisputed Facts*

The following facts are not necessarily accurate, but they reflect application of the summary judgment standard to the parties' submissions on the motion for summary judgment. MAS Capital is an Indiana corporation that provides services to assist companies in going public. As one means of assisting companies in going public, MAS Capital provides a shell company that survives a merger with an operating company, which acquires the shell company, thus enabling the surviving company to become publicly-traded. In this instance, MAS Capital provided a shell company called MAS Acquisition XXIII, which entered into a transaction to be acquired by BDSI. In exchange for providing MAS XXIII, plaintiff MAS Capital obtained more than 300,000 shares of stock and 100,000 stock options in the surviving company that resulted from the merger. The surviving company was renamed BDSI.

BDSI began efforts to have its stock approved for public trading on the NASDAQ. BDSI received a request for additional information from NASDAQ regarding any legal or administrative proceedings involving BDSI, its predecessors, subsidiaries, and past and present officers, directors, and shareholders with five percent or more of its stock. BDSI attorney Samuel Duffey asked Aaron Tsai, the president, chairman, and sole shareholder of MAS Capital, for information to prepare responses.

Tsai provided information about three separate SEC investigations, two of which resulted in SEC enforcement actions against him. One had been settled under an agreement by which Tsai disgorged profits and paid a penalty but admitted no wrongdoing. The other enforcement action was in the pretrial stage at the time of summary judgment briefing in this case.

BDSI also received requests for information about Tsai, his companies, and his involvement with BDSI. BDSI's corporate and securities lawyer Douglas Ellenoff recognized that NASDAQ was not comfortable listing BDSI, so he arranged for a meeting with NASDAQ officials. Ellenoff concluded that any involvement by Tsai or his companies would prevent BDSI's listing on the NASDAQ. Ellenoff told Duffey that he believed BDSI needed to remove Tsai and his entities as shareholders if BDSI wanted to proceed further. Duffey then called Tsai and told him that NASDAQ considered his prior securities involvements unacceptable and said that his or his companies' affiliation or involvement with BDSI would prevent BDSI from being listed on NASDAQ.

Upon BDSI's request, Tsai sold his BDSI stock and relinquished his options in return for consideration of $150,000, which has been paid in full. That transaction occurred on March 29, 2002. As president and on behalf of MAS Capital, Inc., Tsai executed a series of documents in which he released any right that he and/or MAS Capital, Inc. had, "directly or indirectly," to receive "any consideration in any form or nature from BDSI."

BDSI completed its initial public offering in June 2002. Roan/Meyers Associates and Kashner Davidson Securities Corporation acted as underwriters for the offering, which raised $10,500,000.

MAS Capital relies on claims that it says originally belonged to MAS Financial, Inc. In 2002, MAS Financial was a subsidiary of MAS Capital, which had, in Tsai's words, too many subsidiaries to name. Tsai Dep. 20. Tsai is the president and chairman of the board of all the corporations, and he is the sole director of both MAS Capital and MAS Financial. MAS Financial was formed as an Indiana corporation on November 8, 1999, about two months before MAS Capital was formed (on January 12, 2000). MAS Financial merged into MAS Capital on December 23, 2003, after MAS Capital had released any claims against BDSI, and before this suit was filed. MAS Capital contends that the merger effectively transferred from MAS Financial to MAS Capital the claims that are the subject of this suit. Tsai was the only person who needed to decide on the merger of MAS Financial into MAS Capital.

MAS Capital also argues that the release of March 29, 2002 was specific to the stock transaction between MAS Capital and Hopkins Capital, the purchaser of the stock, and was not a general release of unrelated or future claims.

In challenging the effect of the March 29, 2002 release, MAS Capital relies heavily on a payment it received from BDSI on July 5, 2002. The payment was for $977.81 to reimburse travel expenses invoiced on December 14, 2001.

MAS Capital contends that MAS Financial provided services to the BDSI initial public offering in the form of e-mail presentations to IPO underwriters, a presentation at the National Investment Banking Association's California Capital Conference in May 2001, meetings with investment banking firms in New York, and underwriting agreements provided by Roan/Meyers Associates, L.P. and Kashner Davidson Securities Corporation.

MAS Capital further asserts that it is common for companies that provide services to secure IPO underwriters to receive a percentage of the capital generated and the stock sold through an IPO, though it is not specific as to the percentage. To avoid the effect of the release, MAS Capital also argues that MAS Financial's right to receive payment from BDSI did not arise until June 2002, after the March 29, 2002 release.

The parties' summary judgment submissions raise but do not resolve one potentially important factual issue: whether MAS Financial was licensed and registered as a broker-dealer when it provided the services for which it now seeks $1,575,000. One subsidiary of MAS Capital, MAS Capital Securities, had been registered and licensed as a broker under federal law, but Tsai sold that company

three or four years ago. He does not claim that it provided the services in dispute here. In its reply brief, BDSI contended for the first time that MAS Financial and Tsai were not licensed and registered as a broker-dealer.

The evidence offered on this point was Paragraph 11 of the supplemental affidavit of BDSI attorney Duffey. Duffey testified: "I attempted to request information and perform research about MAS Financial and MAS Capital through the NASD and determined that neither entity was a registered broker-dealer." MAS Capital has moved to strike this portion of Duffey's supplemental affidavit as hearsay. The absence of a business or public record can be admissible under Rule 803(7) or Rule 803(10) of the Federal Rules of Evidence, but Duffey's terse assertion appears to fall well short of the "diligent search" needed under Rule 803(10) or the sort of first-hand knowledge of the records needed under Rule 803(7). See *United States v. Zeidman*, 540 F.2d 314, 318-19 (7th Cir. 1976) (affirming admission of evidence that a supervisor's "normal search" of records showed no record); see generally 5 Weinstein's Federal Evidence § 803.09 (2d ed. 2006) (emphasizing need for trustworthy showing of absence of record in question). The court grants the motion to strike Paragraph 11 of Duffey's supplemental affidavit and does not base its decision this evidence. Nevertheless, these are matters that may be relevant to further proceedings on BDSI's counterclaim, at least if proper evidence is offered, such as a response to a request

for admission under Rule 36.[1]  Additional facts are noted below as needed, keeping in mind the standard for summary judgment.

*Discussion*

I.   *The Release*

MAS Capital's attempts to avoid the effect of the March 29, 2002 release are not at all persuasive.  The release was part of a certificate executed by Tsai on March 29, 2002.  The certificate states in full:

> Comes Now Aaron Tsai and hereby represents and warrants as follows:
>
> 1.   Aaron Tsai is the President, a Director and controlling stockholder of MAS Capital Inc.
>
> 2.   Following the closing of the Agreement between MAS Capital Inc. and Hopkins Capital Group II, LLC, dated March 29, 2002, neither MAS Capital Inc. nor Aaron Tsai will either directly or indirectly, own or control any shares of common stock or options to purchase shares of common stock or any other security of BDSI.
>
> 3.   Neither Aaron Tsai nor MAS Capital Inc., either directly or indirectly, have any right or entitlement to any consideration or compensation from BDSI.
>
> 4.   Neither MAS Capital Inc. nor Aaron Tsai, either directly or indirectly, own, control, or have an interest of any nature, in any of the shares of BDSI held of record by the stockholders (other than MAS Capital Inc.) of MAS Acquisition XXIII Corp. at the date of the investment by Hopkins Capital Group II, LLC.

---

[1] Apart from the point of evidence law, MAS Capital has had an opportunity to dispute this point, about which it and Tsai surely know the truth.  It has not yet done so.  See Pl. Surreply Br. at 4-5.

> In witness whereof, I, Aaron Tsai, have provided this Certificate and represent that it is true and correct, and may be relied upon by BDSI, and regulatory agencies with which BDSI is currently engaged, including, but not limited to NASDAQ, NASD and SEC.

Def. Ex. G.  The document was signed by Tsai with a notary's certificate dated March 29, 2002, in Los Angeles, California.

The release is governed by Florida law, for it is part of a transaction for which the parties agreed that Florida law should govern.  See Def. Ex. F, ¶ 6.  "To determine the scope of a release, we look to the parties' intent as expressed in the contract."  *Solitron Devices, Inc. v. Honeywell, Inc.*, 842 F.2d 274, 277 (11th Cir. 1988).  Under Florida law, clear and unambiguous language in a written contract will be enforced as written, giving effect to the contract as a whole.  See, *e.g.*, *Leisure Resorts, Inc. v. City of West Palm Beach*, 864 So.2d 1163, 1166 (Fla. App. 2003).

MAS Capital's claims in this lawsuit simply are not consistent with the certificate.  At the time Tsai signed the certificate, MAS Financial was a subsidiary of MAS Capital, and Tsai was the only shareholder of MAS Capital.  Tsai was the president and the only director of both companies.  Any right or entitlement to any consideration or compensation from BDSI that MAS Financial might have had would have benefitted only MAS Capital and Tsai. If MAS Capital were to prevail in this case, it would be securing consideration or compensation from BDSI and providing it directly or indirectly to both MAS Capital and to Tsai himself.  Yet Tsai

certified on March 29, 2002 that he and MAS Capital did not have, "directly or indirectly," "any right or entitlement to any consideration or compensation from BDSI." Def. Ex. G. That certification is broad enough to foreclose MAS Capital's claims in this case.

To avoid this conclusion, MAS Capital argues (a) that the March 29, 2002 certificate and its release were limited to the stock and option sale and did not apply to services that MAS Financial had been providing, and (b) that MAS Financial did not become entitled to consideration or compensation from BDSI until the initial public offering went forward in June 2002, so that the certification was literally true as of March 29, 2002, even as applied to MAS Financial.

The first argument is defeated by the language of the certificate and its release, and by the undisputed facts concerning the circumstances of the transaction.[2] The issue is how the parties expressed their intent in the contract, not any secret meaning the parties might have attributed to the language. Nothing in the certificate and release limits its application as MAS Capital has argued. In context, moreover, it is clear that the certificate was intended to assure NASDAQ, NASD, and the SEC that Tsai and his companies had nothing to do with the proposed initial public offering and did not stand to benefit from it. Paragraph two provided the assurance that Tsai and his companies would not own or control

---

[2]Tsai's deposition testimony about a narrower understanding is not admissible to change the meaning of the broad but unambiguous contractual language. See Tsai Dep. 79-81.

any stock or stock options or other securities of BDSI. Paragraph three then went a step further, beyond securities ownership, to address other stakes that Tsai and his companies might have had in the initial public offering. Under these circumstances, plaintiff's efforts to give the language a narrower meaning do not present a genuine issue of material fact. Cf. *Solitron Devices v. Honeywell*, 842 F.2d at 277-78 (reversing summary judgment and finding that the textual context of the agreement showed that broad language in release might have been intended more narrowly).

The second argument is also defeated by the undisputed facts. By the time Tsai executed the March 29, 2002 certificate, he and MAS Financial had provided all the services for which MAS Capital now claims entitlement to compensation. Tsai is asserting now that he had in effect crossed his fingers in the certificate, and that he really meant that he did not *then* have a ripe claim for compensation, but that he had a *contingent* claim for compensation – a claim contingent only on the successful completion of the initial public offering. The broad language that neither he nor MAS Capital "have any right or entitlement to any consideration or compensation from BDSI" is broad enough to cover contingent rights or entitlements. This is especially true for a contingent claim for a whopping 15 percent of the proceeds of the initial public offering – a contingent claim that would seem to be sufficiently material that he might have mentioned it in connection with the buyout of his (MAS Capital's) stock and stock options in BDSI.

In a different context, the Supreme Court has observed that Congress does not "hide elephants in mouseholes," *i.e.*, it does not modify fundamental aspects of a regulatory scheme in vague terms or ancillary provisions. *Gonzales v. Oregon*, \_\_\_ U.S. \_\_\_, \_\_\_, 126 S. Ct. 904, 921 (2006), quoting *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001). Similarly here, the idea that a contingent claim for more than $1.5 million was hidden in the verb tense of Tsai's release – neither Aaron Tsai nor MAS Capital Inc. "have" versus "will have" any right or entitlement to any consideration or compensation from BDSI – stretches the language too far. The phrase "any right or entitlement" is broad enough to include the then-contingent claims being asserted in this lawsuit.[3]

In support of its argument on the contingent claim theory, MAS Capital relies on *Floyd v. Homes Beautiful Construction Co.*, 710 So.2d 177 (Fla. App. 1998), in which the Florida Court of Appeal held that a release given by homeowners to settle a 1986 lawsuit against a construction company did not necessarily bar the homeowners' claim for negligent construction resulting in a fire that occurred in 1993.[4] The Court of Appeal reversed a summary judgment for the construction company and found that the scope of the 1986 release was ambiguous. The release was expressly limited to claims "presently existing,

---

[3]This broad language is also consistent with MAS Capital's warranty in Paragraph 4(v) of the stock agreement with Hopkins Capital (Def. Ex. F) that "following the closing of this Agreement, MAS [Capital] will have no right to receive any consideration in any form or nature from BDSI."

[4]The agreement between Tsai and Hopkins Capital provided that it would be governed by Florida law. The certificate was part of the same transaction.

-13-

whether known or unknown." 710 So.2d at 178. The appellate court treated the phrase as ambiguous in terms of whether the parties intended to apply the release only to causes of action that had fully accrued at that time. *Id.* at 179.

MAS Capital's reliance on *Floyd* is not persuasive here because there is no limiting language such as "presently existing" in the Tsai certificate. In light of the undisputed facts concerning the circumstances and purpose of the transaction – to convince the exchange and regulators that Tsai would have nothing to do with the BDSI initial public stock offering – such words of qualification would have been red flags. Instead, the parties used the broader phrasing that MAS Capital and Tsai did not "either directly or indirectly, have any right or entitlement to any consideration or compensation from BDSI."

MAS Capital also relies on the affidavit of Victor Goldfluss, one of the investment bankers who worked on the BDSI initial public offering. The Goldfluss affidavit offers the conclusion that the March 29, 2002 release documents were "different from and unrelated to the capital generating/underwriting services provided by MAS Financial and Aaron Tsai," and his belief that MAS Capital and Tsai should be paid for the services they provided to BDSI. Mr. Goldfluss's attempt to interpret the relevant documents does not raise a genuine issue of material fact. Nor does his stated belief that plaintiff should win this lawsuit.

MAS Capital also relies on the fact that BDSI sent it a check in July 2002 as reimbursement for travel expenses incurred in December 2001. MAS Capital argues that the reimbursement was inconsistent with BDSI's position that the March 29, 2002 releases released all claims Tsai and his companies might have had against BDSI. The payment for $977.81 in travel expenses is at best for MAS Capital the proverbial scintilla of evidence; it could not persuade a reasonable jury to find that a contingent claim for $1,575,000.00 survived the unambiguous March 29, 2002 releases.

Accordingly, BDSI is entitled to summary judgment in its favor on MAS Capital's claims against it.

II.   *The Counterclaim*

BDSI asserts a counterclaim under Indiana Code § 34-52-1-1, which allows a court to award attorney fees to a prevailing party in any civil action if the court finds that the action or a defense was frivolous, unreasonable, or groundless, or litigated the action in bad faith.

BDSI has come forward with evidence from which the court could readily find that this action was pursued in bad faith by Tsai and MAS Capital and that the plaintiff's claims are frivolous, in light of the March 29, 2002 release and the effort to rely on MAS Financial's purported claims, including the issues that have been raised concerning whether MAS Financial was even licensed to act as a

broker for the transaction and whether an express contract for its services would have been enforceable or void. See 15 U.S.C. §§ 78o(a)(1) & 78cc.[5] There are also issues concerning how stock exchanges or securities regulators would have viewed a "finder's fee" of 15 percent of the IPO proceeds, if Tsai's view of his role had been known to them.

The counterclaim is before the court on summary judgment, however, and the court concludes that these issues may turn on issues of material fact, including intent. The court is not convinced that the evidence is so one-sided that a rational trier of fact could reach only one conclusion. The most prudent course at this point is to deny summary judgment on the BDSI counterclaim and to set the matter for a court trial in the near future.[6]

---

[5]In one extraordinary passage of testimony in this case, Tsai testified that he had a written contract with BDSI that he could not locate, Tsai Dep. at 43, and then was asked about the work that is the basis for his claims in this case: "And tell me what your agreement was relative to being paid for your efforts in recruiting an underwriter." He answered: "I don't recall. We had conversation about compensation." Tsai Dep. at 47.

[6]MAS Capital has raised an interesting issue as to whether Indiana Code § 34-52-1-1 may apply in federal court. See generally *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 n. 31 (1975) (explaining that state law would govern attorney fee award in diversity case, at least "where the state law does not run counter to a valid federal statute or rule of court"). At this time, there is no indication that BDSI has yet served the 21-day warning shot letter required under Rule 11 of the Federal Rules of Civil Procedure. The court expresses no view at this time as to whether an award under Indiana Code § 34-52-1-1 would be permissible where the party receiving the award has not complied with that warning procedure under Rule 11. Cf. *National Recovery & Consulting Group, LLC v. Bartle*, 2002 WL 1800330, *3 (S.D. Ind. July 3, 2002) (awarding fees under Indiana statute but where no issue was raised as to applicability in federal court). Federal courts may also apply 28 U.S.C. § 1927, under which not parties but attorneys may be held liable for prolonging frivolous litigation.

Accordingly, BDSI's motion for summary judgment is hereby granted as to all claims asserted by plaintiff MAS Capital, Inc., and denied as to BDSI's counterclaim against MAS Capital.

So ordered.

Date: August 25, 2006

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jean Marie Blanton
ZIEMER STAYMAN WEITZEL & SHOULDERS
jblanton@zsws.com

Michael E. DiRienzo
KAHN DEES DONOVAN & KAHN
miked@k2d2.com

Steven S. Hoar
KAHN DEES DONOVAN & KAHN
steveh@k2d2.com

Patrick A. Shoulders
ZIEMER STAYMAN WEITZEL & SHOULDERS
pshoulders@zsws.com